865 F.2d 1258
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
JEFFERSON-PILOT LIFE INSURANCE COMPANY, Plaintiff-Appellee,
v.
The CONTINUUM COMPANY, INC., a Texas Corporation; the
Continuum Company, Inc., a Delaware Corporation,
Defendants-Appellants.
 No. 88-1123.
 United States Court of Appeals, Fourth Circuit.
 Argued: Oct. 31, 1988.
Decided: Dec. 21, 1988.
 
 Christopher Marc Nolland (Howard A. Gross, Bickel & Brewer; Richard K. Bennett, H. Aubrey Ford, III, Browder, Russell, Morris & Butcher, P.C., on brief), for appellants.
 Charles Edward Nichols (Fred T. Hamlet, Clyde H. Jarrett, Nichols, Caffrey, Hill, Evans & Murrelle, on brief), for appellee.
 Before WIDENER, CHAPMAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Continuum Company, Inc. appeals from a preliminary injunction prohibiting it from suing the Jefferson-Pilot Life Insurance Company for the alleged breach of a computer software license. We vacate the preliminary injunction.
 
 I.
 
 2
 Continuum is a Delaware corporation doing business in Texas whose corporate predecessors developed a computer software system named LIFE-COMM III. In February 1975 Jefferson-Pilot purchased a 20-year license for $300,000.00 to use LIFE-COMM III. Jefferson-Pilot has paid the full amount, and neither Continuum nor Jefferson-Pilot have any further day-to-day obligations to the other under the license. Jefferson-Pilot invested substantial amounts of money and time in customizing LIFE-COMM III, which it uses to operate many sectors of its business.
 
 
 3
 The license contains a trade secrets provision that prohibits Jefferson-Pilot from disclosing information concerning LIFE-COMM III to any person or business not authorized to use LIFE-COMM III under the license. When Continuum suspected that Jefferson-Pilot was compromising its LIFE-COMM III trade secrets in violation of the license, Continuum contacted Jefferson-Pilot and scheduled a meeting in Texas on March 10, 1988 to discuss these allegations. After the meeting concluded that day, Jefferson-Pilot filed a declaratory judgment action in North Carolina seeking a declaration that it had not breached the license.
 
 
 4
 On March 10 the district court granted the motion of Jefferson-Pilot for a temporary restraining order to enjoin Continuum from suing Jefferson-Pilot or declaring the license breached or terminated. On June 7 the district court entered a preliminary injunction, finding that LIFE-COMM III was essential to Jefferson-Pilot and that Jefferson-Pilot would suffer irreparable harm if it were forced to surrender LIFE-COMM III without adequate time to purchase, modify, and test another system. The court further found that Continuum would suffer no potential harm if Jefferson-Pilot were allowed to continue using LIFE-COMM III pursuant to the license pending resolution of the declaratory judgment action.
 
 II.
 
 5
 The standard for issuance of a preliminary injunction is the balance-of-hardship test stated in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir.1977). Before a preliminary injunction is issued, the district court must consider four factors: "(1) [T]he likelihood of irreparable harm to the plaintiff without the temporary injunction; (2) the likelihood of harm to the defendant with the injunction; (3) [the] plaintiff's likelihood of success on the merits; and (4) the public interest." Telvest, Inc. v. Bradshaw, 618 F.2d 1029, 1032 (4th Cir.1980) (citing Blackwelder ). The first concern under this test is to:
 
 
 6
 [B]alance the likelihood of harm to the plaintiff if the temporary injunction is not issued against the likelihood of harm to the defendant if the temporary injunction is issued. If the harm to the plaintiff greatly outweighs the harm to the defendant, then enough of a showing has been made to permit the issuance of an injunction.... But as the harm to the plaintiff decreases, when balanced against the harm to the defendant, the likelihood of success on the merits becomes important.
 
 
 7
 Telvest, 618 F.2d at 1032-33. Likelihood of success on the merits alone, however, without any showing of a risk of irreparable harm, is not sufficient to warrant the issuance of a preliminary injunction since a plaintiff must always show some risk of probable irreparable injury. See Blackwelder, 550 F.2d at 196.
 
 
 8
 The district court found that Jefferson-Pilot would be irreparably damaged if it were suddenly deprived of the use of LIFE-COMM III. But while this finding is correct, the district court then incorrectly found that Jefferson-Pilot was at risk of Continuum seizing LIFE-COMM III from it. The immediate injury facing Jefferson-Pilot was not that Continuum would suddenly repossess LIFE-COMM III, but that Continuum would file suit against Jefferson-Pilot in Texas. Continuum represented at oral argument, as it did before the district court, that it has no intention of seizing LIFE-COMM III from Jefferson-Pilot unless, after final resolution of litigation, including any available appeals, Jefferson-Pilot is ordered by a court to return LIFE-COMM III to Continuum.
 
 
 9
 Being named as a defendant in a civil suit is a daily occurrence in the insurance business. The only harm Jefferson-Pilot would suffer by being sued in Texas is the inconvenience of having to defend in a forum not of its choosing. This harm does not present a risk of irreparable injury sufficient to support the issuance of a preliminary injunction.
 
 
 10
 VACATED.